**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| **SUZANNE M. GIANNASCA**<br>50 Captain Shankey Drive<br>Garnerville, NY 10923 | *<br><br>* |
| and | * |
| **MICHAEL G. RINN**, Chapter 7 Trustee<br>111 Warren Road, Suite 4<br>Cockeysville, Maryland 20130 | *<br><br>* |
| Plaintiffs | * |
| v. | * |
| **TODD P. MILLER**<br>705 Paige Circle<br>Bel Air, MD 21014 | *<br><br>* |
| and | * |
| **EDWIN G. CARSON**<br>30 Office Street<br>Bel Air, MD 21014 | *<br><br>* |
| and | * |
| **STARK AND KEENAN, P.A.**<br>30 Office Street<br>Bel Air, MD 21014<br>    <u>Serve On:</u><br>    GREGORY A. SZOKA, Esquire<br>    30 Office Street<br>    Bel Air, MD 21014 | *<br><br>*<br><br>*<br><br>* |
| and | * |
| **MIDSTATE FEDERAL<br>   SAVINGS AND LOAN ASSOCIATION**<br>6810 York Road<br>Baltimore, MD 21212<br>    <u>Serve On:</u><br>    N. Alan Anthony, Resident Agent<br>    6810 York Road | *<br><br>*<br><br>*<br><br>* |

**FIRST AMENDED
COMPLAINT FOR DAMAGES
& DECLARATORY AND
INJUNCTIVE RELIEF and
DEMAND FOR JURY TRIAL**

**Civil Case No.:
 1:13-cv-00666-JKB**

Baltimore, MD 21212

    \*

    \*

    \*

and

    \*

**CHICAGO TITLE INSURANCE**
   **COMPANY OF MARYLAND**    \*
110 St. Paul Street
Baltimore, MD 21202    \*
    <u>Serve On:</u>
    John A. Magee, IV, Resident Agent   \*
    110 St. Paul Street
    Baltimore, MD 21202    \*

and

    \*

**BRANCH BANKING AND TRUST**
**COMPANY**    \*
150 South Stratford Road
Winston-Salem, NC 27104    \*
    <u>Serve On:</u>
    The Corporation Trust Incorporated,  \*
     Resident Agent
    351 West Camden Street    \*
    Baltimore, MD 21201    \*

and

    \*

**FIRST AMERICAN EQUITY**
   **LOAN SERVICES, INC.**    \*
1 Erieview Plaza, 5th Floor
Cleveland, Ohio 44114    \*
    <u>Serve On:</u>
    CSC-Lawyers Incorporating    \*
     Service Company, Resident Agent
    7 St. Paul Street, Suite 1660    \*
    Baltimore, MD 21202    \*

and

    \*

**QUICKEN LOANS, INC.**
1050 Woodward Avenue    \*
Detroit, MI 48226

    \*

Serve On:
The Corporation Trust Incorporated,      *
  Resident Agent
351 West Camden Street                    *
Baltimore, MD 21201

and

**"JOHN DOE" TITLE INSURANCE
COMPANY**
[Insurer of Quicken Loans, Inc. Transaction]
[Address unknown/TBD]                     *
  Serve On:
  TBD, Resident Agent
  [Address unknown/TBD]

    Defendants

**<u>COMPLAINT
FOR
DAMAGES
&
INJUNCTIVE
RELIEF</u>
and
<u>DEMAND FOR JURY TRIAL</u>**

      Plaintiff, Suzanne M. Giannasca (hereinafter "Giannasca"), by and through her attorneys, Leslie A. Pladna, Esquire, and Leslie A. Pladna  & Associates, P.A., hereby files this Complaint for Damages and Injunctive Relief against Defendants Todd P. Miller, Edwin G. Carson, Stark and Keenan, P.A., Midstate Federal Savings and Loan Association, Chicago Title Insurance Company of Maryland, Branch Banking and Trust Company, 1st American Equity Loan Services, Inc., Quicken Loans, Inc., and "John Doe" Title Insurance Company, and states as follows:

## I.  PRELIMINARY STATEMENT

      This action seeks to redress the fraud and criminal conduct, negligent and/or gross negligent acts and/or omissions of the aforesaid Defendants, individually and/or by and through their respective principals, directors, officers, employees, agents, and/or representatives arising out of claims, *inter alia*, brought under the Maryland Protection of

Homeowner's in Foreclosure Act (MD. REAL PROP. CODE ANN. §§ 7-301, *et seq*.) (hereinafter "PHIFA"), the Maryland Consumer Protection Act, MD. COMM. LAW CODE ANN. §§ 13-101, *et seq.* (hereinafter called "**MCPA**"), U.S. Bankruptcy laws, and other State and/or Federal liability claims, *inter alia*, for negligence, gross negligence, fraud, intentional acts to recover monetary damages, legal and/or equitable relief, injunctive relief, attorneys' fees and costs, and declaratory relief.

The fraud and criminal conduct perpetrated by the defendants includes, but is not limited to, fraud colloquially known as "foreclosure rescue fraud" and "foreclosure rescue scam" and fraud arising out of intentional actions of certain Defendants in violation of State and Federal laws.

The conduct of the certain Defendants is precisely that conduct that has in recent years become so rampant in the Baltimore-Washington metropolitan area — and so horrendous in its effects on Maryland consumers — that it was addressed by emergency legislation enacted by the Maryland Legislature in 2005 and signed into law by Governor Ehrlich on May 26, 2005 as the Maryland Protection of Homeowners in Foreclosure Act and codified, since 26 May 2005, at Md. Code Ann., Real Prop., §§ 7-301, *et seq.* (hereinafter, "**PHIFA**").   That PHIFA law was subsequently amended, again by emergency legislation enacted by the Maryland Legislature in 2008 and signed into law effective April 3, 2008[1].

## II.  JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (Diversity), 28 U.S.C. §1331 (Federal Question), and 28 U.S.C. §1367 (Supplemental Jurisdiction).

---

[1] All references to PHIFA hereinafter shall be to the 2008 amended version of the Md. Code Real Prop. Ann. §7-30 *et seq.*, referenced as RP §7-301 followed by the appropriate subsection where applicable.

2.      Venue is proper in this District because, under 28 U.S.C. §1391(b), a substantial part of the events giving rise to claims herein occurred within this District and the Defendants all systematically and continually transact business in this District.

3.      Plaintiff, Suzanne M. Plaintiff (hereinafter called "Plaintiff"), is a natural person who resides at 50 Captain Shankey Drive, Gardnerville, NY 10923.

4.      Plaintiff is the former owner of 3201 Jourdan Court, Abingdon, MD 21009 (the "Property").

5.      Plaintiff is currently a Debtor in a pending Chapter 7 Bankruptcy Case No. 11-20853.

6.      Plaintiff, Michael G. Rinn hereinafter "Trustee Rinn"), is the Court-appointed Chapter 7 Trustee in Bankruptcy Case No. 11-20853.

7.      At all times relevant hereto, Plaintiff was a "**homeowner**" as that term is defined by PHIFA.  RP §7-301(i).

8.      At all times relevant hereto, the Property was a "**residence in default**" as that term is defined by PHIFA. RP §7-301(j).

9.      From July 28, 1993 through July 12, 2011, Plaintiff continuously resided in Harford County, Maryland at the Property, which is her principal residence.

10.     Defendant Todd P. Miller (hereinafter called "Miller") is a natural person who resides in Harford County, Maryland.

11.     At all times relevant hereto, Miller was a client of Defendants Edwin G. Carson and/or Stark and Keenan, P.A.

12.     At all times relevant hereto, Miller was a "**Foreclosure consultant**" as that term is defined by PHIFA. RP §7-301(c).

13.     At all times relevant hereto, Miller performed services that amount to a "**Foreclosure consulting service**" as that term is defined by PHIFA. RP §7-301(e).

14.     Defendant Edwin G. Carson (hereinafter called "Carson") is a natural person whose principal place of business is located in Harford County, Maryland at 30 Office Street, Bel Air, MD 21014.

15.     At all times relevant hereto and to date, Carson was and is a principal, director, officer, employee, member, agent and/or duly authorized representative of the Defendant Stark and Keenan, P.A.

16.     At all times relevant hereto, Carson held a title insurance producers license issued by the Maryland Insurance Administration under License No.:   000041530.  *See* Maryland Administration Licensee Look-up Certification, attached hereto and incorporated by reference herein as **Exhibit 1.**

17.     As a Maryland licensed title insurance producer, Carson conducted real estate settlement transactions involving, *inter alia*, real property located in the State of Maryland, including the subject Property.

18.     At all times relevant hereto, Carson was a real estate settlement officer for Stark & Keenan and was acting within the scope of his employment, agency and/or contractual relationship with Stark & Keenan.

19.     At all times relevant hereto, Carson was a title insurance producer for, *inter alia*, Defendant Chicago Title Insurance Company of Maryland and was acting within the scope of his employment, agency and/or contractual relationship with said title insurer regarding the Property.

20.     At all times relevant hereto, Carson was licensed by the Maryland Secretary of

State to act in the capacity as a notary public.

21.    At all times relevant hereto, Carson performed legal services for the benefit of Miller, both prior and subsequent to the real estate transaction that is the subject of this litigation.

22.    At all times relevant hereto, Carson was a "**Foreclosure consultant**" as that term is defined by PHIFA. RP §7-301(c).

23.    At all times relevant hereto, Carson performed services that amount to a "**Foreclosure consulting service**" as that term is defined by PHIFA. RP §7-301(e).

24.    Defendant Stark and Keenan, P.A. (hereinafter called "Stark & Keenan") is a legal professional association organized under and authorized do business in the State of Maryland with a principal place of business located in Harford County, Maryland at 30 Office Street, Bel Air, MD 21014.

25.    At all times relevant hereto, Carson and Stark & Keenan regularly conducted real estate transactional settlements throughout the State of Maryland and Harford County, Maryland.

26.    On information and belief, Stark & Keenan, it is employees, members, principals, officers, directors, and/or authorized agents (hereinafter the "Firm", perform legal services for the benefit of Miller, both prior and subsequent to the real estate transaction that is the subject of this litigation.

27.    At all times relevant hereto, the Firm was a "**Foreclosure consultant**" as that term is defined by PHIFA. RP §7-301(c).

28.    At all times relevant hereto, the Firm performed services that amount to a "**Foreclosure consulting service**" as that term is defined by PHIFA. RP §7-301(e).

29.     Defendant Midstate Federal Savings and Loan Association (hereinafter called "Midstate") financial institution authorized to do business in the State of Maryland with a principal place of business located at 6810 York Road, Baltimore, MD 21212.

30.     Midstate was the funding lender and/or note holder in connection with the purchase money mortgage note that was executed by Miller for the purchase of the Property from Plaintiff on March 4, 2010.

31.     Defendant Chicago Title Insurance Company of Maryland (hereinafter "Chicago Title") is a corporation organized under the laws of and licensed to do business in the State of Maryland with a principal office located at 110 St. Paul Street, Baltimore Maryland, 21202.

32.      At all times relevant hereto, Chicago Title was the real estate title insurance company that issued the title insurance coverage binder in connection with the March 4, 2010 real estate transaction that resulted in the March 4, 2010 transfer of title to the Property from Plaintiff to Miller that is the subject of this litigation.

33.     Upon information and belief, at all times relevant hereto, Miller variously acted as an agent, co-conspirator, aider and/or abetter of the unlawful, tortious, intentional and/or wrongful acts of Miller, Carson, Stark and Keenan, the Firm, and Chicago Title.

34.     Upon information and belief, at all times relevant hereto, Carson variously acted as an agent, co-conspirator, aider and/or abetter of the unlawful, tortious, intentional and/or wrongful acts of Miller, Carson, Stark and Keenan, the Firm, and Chicago Title.

35.     Upon information and belief, at all times relevant hereto, Keenan & Stark variously acted as an agent, co-conspirator, aider and/or abetter of the unlawful, intentional, tortious and/or wrongful acts of Miller, Carson, Stark and Keenan, the Firm, and Chicago Title.

36.     Upon information and belief, at all times relevant hereto, the Firm, through its

principals, directors, managers, officers, employees, members, agents and/or duly authorized representatives, variously acted as an agent, co-conspirator, aider and/or abetter of the unlawful, intentional, tortious and/or wrongful acts of Miller, Carson, Stark and Keenan, the Firm, and Chicago Title.

37. Defendant Branch Banking and Trust Company (hereinafter "BB&T") is a financial institution organized under the laws of the State of North Carolina and authorized to do business in the State of Maryland with its principal office located at 150 S. Stratford Road, Winston-Salem, NC 27104.

38. BB&T was, at one more times relevant here and as of March 17, 2010, the holder of a 2nd lien Home Equity Line of Credit ("HELOC") note obtained by Miller 13 days after he took title to the Property, which HELOC is secured by a Deed of Trust in connection with the Property.

39. Defendant First American Equity Loan Services, Inc. (hereinafter "First American") is a financial institution organized under the laws of the State of Ohio and authorized to do business in the State of Maryland with its principal office located at 1 Erieview Plaza, 5th Floor, Cleveland, OH 44114.

40. First American was, at one more times relevant hereto after March 4, 2010, the holder of a mortgage note secured by a Deed of Trust in connection with the Property.

41. Defendant Quicken Loans, Inc. (hereinafter "Quicken Loans") is a corporation organized under the laws of the State of Michigan and authorized to do business in the State of Maryland with its principal office located at 1050 Woodward Ave., Detroit, MI 48226.

42. Quicken Loans was the funding lender and/or note holder in connection with the mortgage loan note that was executed by Miller for the refinance of the Property by Miller

on February 28, 2012.

43.    Defendant "John Doe" Title Insurance Company ("'John Doe'" Title") is the yet unidentified real estate title insurance company that is presumed to have issued a title insurance coverage binder in connection with the February 28, 2012 real estate loan refinance of the Property by Miller that is the subject of this litigation.

44.    Upon information and belief, at all times relevant hereto, Miller variously acted as an agent, co-conspirator, aider and/or abetter of the unlawful, tortious, intentional and/or wrongful acts of Miller and Quicken Loans and "John Doe" Title in connection with the February 28, 2012 real estate loan refinance of the Property by Miller that is the subject of this litigation.

45.    Upon information and belief, at all times relevant hereto, Quicken Loans, through its principals, directors, managers, officers, employees, members, agents and/or duly authorized representatives, variously acted as an agent, co-conspirator, aider and/or abetter of the unlawful, tortious, intentional and/or wrongful acts of Miller and Quicken Loans and "John Doe" Title in connection with the February 28, 2012 real estate loan refinance of the Property by Miller that is the subject of this litigation.

46.    Upon information and belief, at all times relevant hereto, "John Doe" Title, through its principals, directors, managers, officers, employees, members, agents and/or duly authorized representatives, variously acted as an agent, co-conspirator, aider and/or abetter of the unlawful, tortious, intentional and/or wrongful acts of Miller and Quicken Loans and "John Doe" Title in connection with the February 28, 2012 real estate loan refinance of the Property by Miller that is the subject of this litigation.

## IV.  FACTUAL ALLEGATIONS

47.     On July 28, 1993 Plaintiff and her then husband, Edward V. Giannasca, II, Grantees, executed a Deed in connection with the purchase of 3201 Jourdan Court, Abingdon, MD 21009 (the "Property") recorded among the Land Records of Harford County, Maryland on August 13, 1993 at Liber 1994, Folio 104, and attached hereto and incorporated by reference herein as **Exhibit 2.**

48.     On July 28, 1993, Plaintiff and Mr. Giannasca, Grantors, executed a Note in the principal amount of $188,000.00 secured by a purchase money Mortgage of even date encumbering the Property, which Mortgage is recorded among the Land Records of Harford County, Maryland on August 13, 1993 at Liber 1994, Folio 106, and attached hereto and incorporated by reference herein as **Exhibit 3.**

49.     On September 4, 1998, Plaintiff and Mr. Giannasca, Grantors, executed another Note secured by a Deed of Trust of even date encumbering the Property, which Deed of Trust is recorded among the Land Records of Harford County, Maryland on September 17, 1998 at Liber 2809, Folio 0338, and attached hereto and incorporated by reference herein as **Exhibit 4**

50.     On September 25, 2003 Plaintiff and Mr. Giannasca, Grantors, executed a Refinance Note secured by a Deed of Trust of even date encumbering the Property, which (Refinance) Deed of Trust is recorded among the Land Records of Harford County, Maryland on October 14, 2003 at Liber 4954, Folio 0510, and attached hereto and incorporated by reference herein as **Exhibit 5.**

51.     Subsequently, an October 3, 2003 Certificate of Satisfaction was recorded among the Land Records of Harford County, Maryland on January 15, 2004 at Liber 5100, Folio 0081 (releasing the July 28, 1993 Mortgage at Liber 1994, Folio 106), which Certificate

of Satisfaction is attached hereto and incorporated by reference herein as **Exhibit 6.**

52.    Thereafter, an October 15, 2003 Certificate of Satisfaction was recorded among the Land Records of Harford County, Maryland on January 23, 2004 at Liber 5100, Folio 0441 (releasing the September 4, 1998 Deed of Trust at Liber 2809, Folio 0338), which Certificate of Satisfaction is attached hereto and incorporated by reference herein as **Exhibit 7.**

53.    On June 29, 2007, incident to the divorce of Plaintiff and Mr. Giannasca, they executed as Grantors a Deed into Suzanne M. Giannasca, Grantee, which Deed is recorded among the Land Records of Harford County, Maryland on October 11, 2007 at Liber 07563, Folio 322, and attached hereto and incorporated by reference herein as **Exhibit 8.**

54.    On October 12, 2009, a Statement of Lien against Property, issued by Woodland Run Homeowner's Association, Inc., was recorded among the Land Records of Harford County, Maryland on November 25, 2009 at Liber 08427, Folio 272, which Statement of Lien is attached hereto and incorporated by reference herein as **Exhibit 9.**

55.    On December 8, 2009, a Blanket Assignment of Mortgage/Deed of Trust issued by the Federal Deposit Insurance Corporation as receiver for Bradford Bank, Baltimore, Maryland, by M&T Bank, its Attorney-In-Fact, pertaining to the (Refinance) Deed of Trust previously recorded among the Land Records of Harford County, Maryland on October 14, 2003 at Liber 4954, Folio 0510 for the benefit of the successor note holder of the $166,000.000 Note, namely Golden Prague Federal Savings and Loan Association, was recorded among the Land Records of Harford County, Maryland on December 11, 2009 at Liber 08449, Folio 478, which Assignment is attached hereto and incorporated by reference herein as **Exhibit 10.**

56.     Beginning in 2008, after Plaintiff's divorce, Plaintiff, a full time homemaker who had been living off of the proceeds of invested funds following the resolution of a real estate transaction with her ex-husband, which investment portfolio was substantially depleted following the U.S. economic crisis in the Fall of 2008, fell behind on the mortgage Note associated with the Property that was owed to M&T Bank (Acct. No. ending 2032).

57.     After trying for months through a mortgage specialist to refinance or modify her loan, by on or about November, 2009 Plaintiff was at least three (3) months in arrears on her mortgage payments**.**

58.     Miller was aware that the property have substantial equity in it estimated at $200,000 or more because Plaintiff repeatedly told him this.

59.     As of January 1, 2009 up to and including December 31, 2010, the Maryland State Department of Assessment and Taxation ("SDAT") valued the Property for assessment purposes at $364,920.00. *See* SDAT Property Tax Record dated as of December 11, 2009, attached hereto and incorporated by reference herein as **Exhibit 11.**

60.     On information and belief, at all times relevant hereto, including but not limited to prior to December 16, 2009 through and including March 4, 2010, Miller, Carson, Stark and Keenan, and the Firm were on public notice of the $364,920.00 SDAT Property Tax assessed valuation of the Property.

61.     On information and belief, the $364,920.00 SDAT Property Tax assessed valuation of the Property represented its fair market value.

62.     On information and/or belief, on or about December 16, 2009, Carson and/or Stark and Miller prepared a Residential Lease (hereinafter the "Lease") of even date for the Property at a time when the Property was still owned and titled in Plaintiff's name. *See*

December 16, 2009 Lease, attached hereto and incorporated by reference herein as **Exhibit 12.**

63.     To the best of her recollection, Plaintiff does not recall reviewing the Lease or its terms or signing the pre-printed Lease prior to the hereinafter referenced March 4, 2010 settlement date.

64.     The purpose of the Lease was to facilitate Plaintiff to remain in the Property after transfer of title to the Property to Miller.

65.     The Lease was for a stated term of 24 months beginning February 1, 2009 and ending on January 31, 2011 any monthly rent of $1,500.00 per month due on the 1st of each month.

66.     On information and belief, the Lease was prepared by Carson, Stark and Keenan, and/one or more employees or agents of the Firm at the direction and/or for the benefit of Miller with knowledge and/or the benefit of access to public notice that the Property was still owned and titled in Plaintiff's name.

67.     On information and/or belief, on or about December 16, 2009, Carson and/or Stark and Miller also prepared a Residential Lease Addendum (hereinafter the "Lease Addendum") of even date for the Property at a time when the Property was still owned and titled in Plaintiff's name.  *See* December 16, 2009 Lease Addendum, attached hereto and incorporated by reference herein as **Exhibit 13.**

68.     To the best of her recollection, Plaintiff does not recall reviewing the Lease Addendum or its terms or signing the pre-printed Lease Addendum prior to the hereinafter referenced March 4, 2010 settlement date.

69.     The Lease Addendum appears to have corrected the erroneous retrospective

start date of the lease term contained in the Lease to instead begin on "February 1, 2010, or date of settlement, which ever comes first."

70.    The Lease Addendum included an additional clause requiring Miller to sell the Property back to Plaintiff "at a price of 15% less than the appraised price" at the time of purchase so long as the purchase occurred within "the 25 month period of the property purchase."  *See* **Exhibit 13** at paragraph 3.

71.    On information and belief, the Lease Addendum was prepared by Carson, Stark and Keenan, and/one or more employees or agents of the Firm at the direction and/or for the benefit of Miller with knowledge and/or the benefit of access to public notice that the Property was still owned and titled in Plaintiff's name.

72.    On or about December 17, 2009, an Agreement of Sale of even date (hereinafter the "Purchase Agreement") regarding the Property was executed by Plaintiff as Seller, and Miller as Buyer. *See* December 17, 2009 Purchase Agreement, attached hereto and incorporated by reference herein as **Exhibit 14.**

73.    The Purchase Agreement contained essentially ambiguous purchase price terms, but clearly was not intended to compensate Plaintiff at settlement in an amount even close to the actual fair market value of the Property. *See* Purchase Agreement at paragraphs 2 and 3.

74.    The apparent intent of the Purchase Agreement was for the purchase price to be equivalent to the amount needed to pay off the 1st mortgage lien, put $18,000.00 in escrow to cover Plaintiff's rent payments post-closing to Miller, with no apparent guarantee of any equity from the sale of the Property to go to Plaintiff.

75.    On information and belief, the Purchase Agreement was prepared by Carson,

Stark and Keenan, and/one or more employees or agents of the Firm at the direction and/or for the benefit of Miller with knowledge that the Property was a "residence in default" as that term is defined by PHIFA, and/or, by the exercise of due diligence, should have been so known and/or definitely ruled out on or before March 4, 2010.

76.     On or about December 17, 2009, an Amendment to Agreement of even date (hereinafter the "Amendment Agreement") regarding the Property was executed by Plaintiff as Seller, and Miller as Buyer.  *See* December 17, 2009 Amendment Agreement, attached hereto and incorporated by reference herein as **Exhibit 15.**

77.     On information and belief, the Amendment Agreement was prepared by Carson, Stark and Keenan, and/one or more employees or agents of the Firm at the direction and/or for the benefit of Miller with knowledge that the Property was a "residence in default" as that term is defined by PHIFA, and/or, by the exercise of due diligence, should as here so known and/or definitely ruled out on or before March 4, 2010.

78.     On March 4, 2010, Plaintiff and Miller attended a real estate settlement conducted by Carson as the settlement officer at the offices of Stark and Keenan where, *inter alia*, at which time Plaintiff, as Grantor, executed a Deed transferring title to the Property to Miller as Grantee, which Deed is recorded among the Land Records of Harford County, Maryland on April 1, 2010 at Liber 08586, Folio 251, attached hereto and incorporated by reference herein as **Exhibit 16.**

79.     At the March 4, 2010 settlement, Miller executed a Purchase Money Note for the benefit of Midstate, the funding lender and/or note holder, in the principal sum of $178,000.00 secured by a Purchase Money Deed of Trust encumbering the Property, which Purchase Money Deed of Trust was recorded among the Land Records of Harford County,

Maryland on April 1, 2010 at Liber 08586, Folio 256, attached hereto and incorporated by reference herein as **Exhibit 17.**

80.     Despite Plaintiff's protestations at the settlement table in front of Miller and Carson that Plaintiff was upset that Miller was getting all the benefit of the sale of the Property to Plaintiff's detriment, she was, nevertheless, rushed through the settlement process by Carson as he put the document after document in front of her and instructed her to execute each one.

81.     Carson did not address or attempt to address Plaintiff's expressions of concern about the financial nature and extent of the contract by Carson, Stark and Keenan, and/or one of more members of the Firm had negotiated on behalf of Miller.

82.     Plaintiff was under duress at the time that she executed the March 4, 2010 settlement documents because she was an imminent fear of losing her home foreclosure.

83.     From on or about late 2009 through March 4, 2010, Carson, Stark and Keenan, and/or the Firm, represented Miller's interests in connection with the purchase of the Property, preparing all the documents executed by Miller and/or Plaintiff regarding the Property.

84.     One of the documents executed by Miller at the time of settlement was a March 4, 2010 Collateral Assignment of Rents and Leases for the benefit of Midstate, which document is recorded among the Land Records of Harford County, Maryland on April 1, 2010 at Liber 08586, Folio 279, and is attached hereto and incorporated by reference herein as **Exhibit 18.**

85.     Thereafter, on March 16, 2010 a Certificate of Satisfaction was recorded among the Land Records of Harford County, Maryland on March 23, 2010 at Liber 08586, Folio 402 (releasing the 09/25/2003 Deed of Trust at Liber 4954, Folio 0510), which

Certificate of Satisfaction is attached hereto and incorporated by reference herein as **Exhibit 19.**

86.    On May 17, 2010, Miller executed a Home Equity Line Note with BB&T in the principal sum of $50,000 representing a further encumbrance on the Property as secured by a 2nd Deed of Trust, which 2nd Deed of Trust is recorded among the Land Records of Harford County, Maryland on May 25, 2010 at Liber 08654, Folio 080, and is attached hereto and incorporated by reference herein as **Exhibit 20.**

87.    The May 17, 2010 HELOC appears to name First American as note holder and/or servicer of the HELOC originally funded by BB&T.

88.    The May 17, 2010 HELOC also indicates at Section 11 on the Land Records Intake Sheet (last page of Exhibit 20) that the property being conveyed is the [Miller as] "grantee's principal residence.

89.    On information and belief, at no time to date has Miller lived in the Property as his principal residence.

90.    Sometime on or about May 5, 2011, Plaintiff learned that the May 4, 2010 sale of her Property and the associated rent back lease agreement between her and Miller was a violation of PHIFA.

91.    On May 5, 2011, Plaintiff executed a Revocation of Power of Attorney and Rescission and Cancellation of Foreclosure Consultant Contract and Foreclosure Reconveyance Deed ("Deed of Rescission"), which Deed of Rescission was recorded among the Land Records of Harford County, Maryland on May 6, 2011 at Liber 09164, Folio 214, and is attached hereto and incorporated by reference herein as **Exhibit 21.**

92.    The May 5, 2011 Deed of Rescission inadvertently the wrong Liber and Folio in

connection with the March 4, 2010 Deed from Plaintiff to Miller.

93.    On May 23, 2011, Plaintiff filed a Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court for the District of Maryland (Baltimore Division) (Case No.: 11–20853), which Petition and Schedules are attached hereto and incorporated by reference herein as **Exhibit 22.**

94.    Plaintiff's Bankruptcy Petition duly noted her claim against Miller in connection with the March 4, 2010 sale of her Property to Miller.

95.    Miller attended the first 341 Meeting of Creditors held on July 1, 2011.

96.    At the 341 Meeting of Creditors, he told the then Chapter 7 Trustee in front of Plaintiff and her bankruptcy attorney that he was a victim of the March 4, 2010 real estate transaction with Plaintiff.

97.    Prior to July 1, 2011, Miller had initiated Landlord-Tenant eviction proceedings against Plaintiff.

98.    On July 7, 2011, Miller filed a Complaint for Repossession of Rented Property against Plaintiff.  *See* District Court for Harford County, Maryland Complaint (Case No.: 2011007056), attached hereto and incorporated by reference herein as **Exhibit 23.**

99.    On July 12, 2011, nine (9) days prior to the scheduled July 22, 2011 District Court trial date --  fearing that Miller would precipitously remove and/or destroy her personal property incident to eviction, she vacated, the Property the  deadline, Plaintiff vacated the Property.

100.    On August 31, 2011, the United States Bankruptcy Court issued an Order of Discharge of Debtor, the Plaintiff, in Case No.: 11–20853, which Order is attached hereto and incorporated by reference herein as **Exhibit 24.**

101.    After the original Chapter 7 Trustee resigned his appointment, a second 341 Meeting of Creditors was held on December 13, 2011.

102.    That same day, Plaintiff executed a second Revocation of Power of Attorney and Rescission and Cancellation of Foreclosure Consultant Contract and Foreclosure Reconveyance Deed ("Deed of Rescission"), which December 13, 2011 Deed of Rescission corrected the aforesaid inadvertent recordation reference error contained in the May 5, 2011 Deed of Rescission, which (corrected) Deed of Rescission was recorded on December 14, 2011 among the Land Records of Harford County, Maryland at Liber 09443, Folio 502, and is attached hereto and incorporated by reference herein as **Exhibit 25.**

103.    The May 5, 2011 and December 13, 2011 Deeds of Rescisson constituted public notice of a cloud on the title of the Property arising out of the March 4, 2010 real estate transaction between Plaintiff and Miller effective as of the original May 5, 2011 Deed of Rescission.

104.    Despite the cloud on title to the Property, with knowledge that Plaintiff claimed a dispute against Miller regarding the March 4, 2010 real estate transaction and despite the fact that Plaintiff's Bankruptcy Case was still pending, Miller executed a mortgage Note on February 28, 2012 in the principal amount of $234,200.00 funded and facilitated by Quicken Loans and secured by a Non-Principal Residence Deed of Trust of even date recorded among the Land Records of Harford County, Maryland on March 12, 2012 at Liber 09574, Folio 510, which Non-Principal Residence Deed of Trust is attached hereto and incorporated by reference herein as **Exhibit 26.**

105.    Thereafter, on March 14, 2012, a Certificate of Satisfaction was recorded among the Land Records of Harford County, Maryland at Liber 09591, Folio 232 (releasing

the May 17, 2010 2nd lien Deed of Trust recorded at Liber 8654, Folio 080), which Certificate of Satisfaction is attached hereto and incorporated by reference herein as **Exhibit 27.**

106.    On January 30, 2013, undersigned counsel made a request to the Custodian of Records for Stark and Keenan for all non-privileged documents in its files pertaining to the March 4, 2010 real estate transaction involving the Property certification consistent with Maryland Rule 5–902(b) regarding self-authentication of business records.  *See* January 30, 2013 Letter from Leslie A. Pladna, Esquire, attached hereto and incorporated by reference herein as **Exhibit 28.**

107.    On or about February 2, 2013, Carson responded to undersigned counsel's letter providing some, but decidedly not all, non-privileged documents in connection with the Property and without the requested certification consistent with Maryland Rule 5–902(b). *See* February 1, 2013 Letter from Edwin G. Carson, Esquire, attached hereto and incorporated by reference herein as **Exhibit 29.**

108.    Included in the documents that were provided by Carson, was the March 4, 2010 HUD-1 Settlement Statement reflecting that the Property had been purchased from Plaintiff by Miller for $152,221.94 (Line 101), of which Plaintiff received $23,634.29 (Line 603) and $18,000.00 (Line 102) was purportedly escrowed by Miller, Carson and/or Stark and Keenan to fund Plaintiff's post-closing lease back rental agreement with Miller.  *See* HUD-1 Settlement Statement contained and **Exhibit 30**.

109.    Stark and Keenan conducted the majority of the title, settlement and closing aspects of the March 4, 2010 purchase transaction (Lines 1101 - 1107 and Lines1111 - 1113) and was also paid $1,750.00 for contract prep and negotiations (Line 1303).  *Id.*

110.    That the Property was at the time of March 4, 2010, real estate transaction a

"residence in default" as that term is defined by PHIFA is evidenced by the M&T Bank Pay-off

Statement totaling $109,221.94, which reflects a late fee of $393.84.

## V.  CAUSES OF ACTION

### COUNT I

### VIOLATION OF PROTECTION OF HOMEOWNERS IN FORECLOSURE ACT

MD. REAL PROP. CODE ANN. §§ 7-301, ET. SEQ.
(Against All Named Defendants)

111.   Plaintiff re-alleges the previous paragraphs as if fully restated herein.

112.   Miller, Carson, and/ Stark and Keenan a "foreclosure consultant" as that term

defined by PHIFA because he/it:

a. Represented to Plaintiff that he would stop, enjoin, delay, void, set aside, annu

stay, or postpone the foreclosure sale of Plaintiff's Property; and/or

b. Represented to Plaintiff that he could save the homeowner's residence fror

foreclosure; and/or

c. Arranged for Plaintiff to become a lessee or renter entitled to continue to resid

in the homeowner's residence; and/or

d. Arranged for Plaintiff to have an option to repurchase Plaintiff's residence.

113.   Miller, Carson, and/ Stark and Keenan a "foreclosure consultant" as that term

defined by PHIFA because he/it:

a. Represented to Plaintiff that he would stop, enjoin, delay, void, set aside, annu

stay, or postpone the foreclosure sale of Plaintiff's Property; and/or

b. Represented to Plaintiff that he could save the homeowner's residence fror

foreclosure; and/or

c. Arranged for Plaintiff to become a lessee or renter entitled to continue to resid

in the homeowner's residence; and/or

   d. Arranged for Plaintiff to have an option to repurchase Plaintiff's residence.

114.   Miller was the "foreclosure purchaser" of the Property, as that term is defined b

PHIFA, as Miller acquired title or possession of a deed to Plaintiff's Property while Plaintiff

Property was a residence in default.

115.   Miller, Carson and/or Stark and Keenan, willfully and knowingly violated PHIF

and/or facilitated one or more of the other names Defendants' respective negligent and/o

fraudulent acts and/or omissions when he/it, directly and/or by implication, jointly and/o

severally, personally and/or through his/their respective agents, co-conspirators, aiders and/o

abetters:

   a. Attempted to induce, and did induce, Plaintiff to enter into a foreclosur

      consulting contract that did not comply in all respects with PHIFA.

   b. Failed to provide a written foreclosure consultant contract as required by M

      Code Ann., Real Prop. § 7-306(a);

   c. Failed to provide the notice required by Md. Code Ann., Real Prop. § 7-306(b);

   d. Failed to provide the notice required by Md. Code Ann., Real Prop. § 7-306(c);

   e. Failed to provide the notice required by Md. Code Ann., Real Prop. § 7-310(a);

   f. Failed to provide the notice required by Md. Code Ann., Real Prop. § 7-310(b);

   g. Failed to comply with the requirements of the Home Ownership Equit

      Protection Act, 15 U.S.C. § 1639, and it implementing regulations;

   h. Represented to Plaintiff that he/it would assist Plaintiff in saving her Property;

    i.   Represented to Plaintiff that he/it would assist Plaintiff in saving her Property while recording in the land records a deed transferring title from Plaintiff to Miller;

    j.   Represented to Plaintiff that he/it would assist Plaintiff in saving her Property while recording in the land records a deed of trust transferring title from Plaintiff to Miller as beneficiary;

    k.   Failed to verify that Plaintiff had a reasonable ability to pay for the subsequent reconveyance of the Property back to Plaintiff.

    l.   Failed to verify that Plaintiff had a reasonable ability to make the Lease payments prior to the reconveyance of the Property back to Plaintiff.

    m.  Failed to verify that Plaintiff had a reasonable ability to repurchase the Property within the term of the option to repurchase.

    n.   Entered into a purchase agreement that was unfair and commercially unreasonable

    o.   Entered into a lease agreement that was unfair and commercially unreasonable;

    p.   Entered into a repurchase agreement that was unfair and commercially unreasonable.

    q.   Made numerous statements to Plaintiff, that were false, deceptive, or misleading;

    r.   Recorded documents purporting to transfer Plaintiff's interest in the Property in the land records of Harford, Maryland before Plaintiff's right to rescind had expired;

s.  Claimed, demanded, charged, collected, or received compensation prior t

performance of each and every service that he/it contracted to perform o

represented that he/it would perform pursuant to his/its respective foreclosur

consulting contract(s); and/or

t.  Acquired an interest in the Property in willful and direct violation of PHIFA (*i.e*

Real Prop. § 7-307(5)) and/or public policy.

116.   As a direct result of repeated violations of PHIFA by said Defendants, Plaintiff ha

suffered damages and will continue to suffer damages.

117.   Pursuant to Md. Code Ann., Real Prop. § 7-320, said Defendants are liable t

Plaintiff for actual damages, reasonable attorney fees and costs, and statutory damages equal t

three times the amount of actual damages.

**WHEREFORE**, Plaintiff Suzanne M. Giannasca prays for the following relief, joint

and severally, against all Named Defendants, including, but not limited to:

a.  A declaration that the aforesaid actions and/or omissions committed by Mille

Carson and/or Stark and Keenan, and/or their respective agents, co

conspirators, aiders and/or abetters on his behalf, were willful and/or intention;

in violation of PHIFA;

b.  Return of any money or property given to anyone, directly or indirectly

including each and every one of the Defendants named herein, in connectic

with and/or as a result of the aforesaid February 26, 2006 Transaction betwee

Plaintiff and Miller (hereinafter the "Transaction");

c.  Actual damages in an amount to be determined at trial, with pre- and/or pos

judgment interest and costs;

d.  Statutory damages in equal to three times the amount of actual damages, wit

pre- and/or post-judgment interest and costs;

e.   An award of reasonable attorney's fee and costs; and

f.  Such other relief at law or equity as this Court may deem just and proper.

**Count II:**

**Violation of the Maryland Consumer Protection Act**

MD. COMM. LAW CODE ANN. §§ 12-801, ET. SEQ.
(Against All Named Defendants)

118.   Plaintiff re-alleges the previous paragraph as if fully restated herein.

119.   Pursuant to Md. Code Ann., Real Prop. § 7-320, said Defendants are liable t

Plaintiff for actual damages, reasonable attorney fees and costs, and statutory damages equal t

three times the amount of actual damages.

120.   At all times relevant hereto, to date and continuing, the aforesaid respective join

and/or several acts, omissions, services and/or conduct of the aforesaid Defendants prior, at th

time of, and/or subsequent to the Transaction between Plaintiff and Miller were governed by th

Consumer Protection Act, MD. COMM. LAW CODE ANN. §§ 13-101, *et seq*. ("MCPA").

121.   The Maryland legislature stated that "[t]he General Assembly recognizes that ther

are federal and State laws which offer protection in these areas, especially insofar as consume

credit practices are concerned, but it finds that existing laws are inadequate, poorly coordinate

and not widely known or adequately enforced." MD. COMM. LAW CODE ANN. § 13-102 (a)(2).

122.   The legislature's purpose in enacting the MCPA states that "[t]he Genera

Assembly concludes, therefore, that it should take strong protective and preventive steps t

investigate unlawful consumer practices, to assist the public in obtaining relief from thes

practices, and to prevent these practices from occurring in Maryland. It is the purpose of this titl

to accomplish these ends and thereby maintain the health and welfare of the citizens of th

State." MD. COMM. LAW CODE ANN. § 13-102 (b)(3).

123.    MD. COMM. LAW CODE ANN. § 13-101 (c) defines a Consumer as: "an actual

prospective purchaser, lessee, or recipient of consumer goods, consumer services, consume

realty, or consumer credit."

124.    MD. COMM. LAW CODE ANN. § 13-101 (d) provides: "Consumer credit", "consume

debts", "consumer goods", "consumer realty", and "consumer services" mean, respectivel

credit, debts or obligations, goods, real property, and services which are primarily for persona

household, family, or agricultural purposes.

125.    Plaintiff is a Consumer as defined by MCPA. The loans arranged by sai

Defendants and others were primarily for her personal, household or family purposes.

126.    MD. COMM. LAW CODE ANN. § 13-101 (g) provides: "Merchant" means a person wh

directly or indirectly either offers or makes available to consumers any consumer good

consumer services, consumer realty, or consumer credit.

127.    Said Defendants were a Merchants as defined by MCPA.

128.    Said Defendants, by and through their respective officers, directors, principal

members, supervisors, managers, employees, agents, and/or representatives, committed unfa

and/or deceptive trade practices by respectively: (a) making one or more false or misleading or

or written statement(s) or other representation(s) of a kind which had the capacity, tendency,

effect of deceiving or misleading Plaintiff; and (b) failing to state one or more material fact(s

and which failure(s) deceived or tended to deceive Plaintiff.

129.    Said Defendants made false statements and/or misleading oral and written an

other representations, misrepresentations, and/or omissions to Plaintiff pertaining to, i

connection with, and/or arising out of the loan, settlement and/or lease transactions as allege

herein and in violation of that which is required by Maryland and federal laws regulatin

merchants, title insurance producers, mortgage lenders,  loan originators, brokers and/or titl

companies.

130.   Said Defendants made false statements or misleading oral and written and othe

representations, misrepresentations, or omissions Plaintiff in connection with, and/or arising o

of the loan, settlement and/or lease transactions as alleged herein pertaining to the March ∢

2010 Transaction in violation of that which is required by Maryland and law.

131.   Plaintiff has been damaged by the false statements, illegal and/or improper act

and/or omissions of said Defendants.

132.   But for the unfair and deceptive practices of the said Defendants, Plaintiff woul

also not have suffered injury any loss, including, but not limited to, the loss of equity in th

Property and other actual, consequential, and compensatory damages caused by and throug

the false statements, illegal and/or improper acts and/or omissions of the aforesaid Defendant

and others.

**WHEREFORE**, Plaintiff Suzanne M. Giannasca prays for the following relief, jointly an

severally, against all Named Defendants, including, but not limited to:

a. A declaration that the aforesaid actions and/or omissions committed by sai

Defendants and/or his/its respective agents, co-conspirators, aiders and/c

abetters acting on his/its behalf, constitute one or more violation(s) of MCPA;

b. Return of any money or property given to anyone, directly or indirectl

including each and every one of the said Defendants named herein, i

connection with and/or as a result of the Transaction;

    c.  Actual damages in an amount to be determined at trial, with pre- and/or post-

        judgment interest and costs;

    d.  Statutory damages in equal to three times the amount of actual damages, with

        pre- and/or post-judgment interest and costs;

    e.  An award of reasonable attorney's fee and costs; and

    f.  Such other relief at law or equity as this Court may deem just and proper.

**Count III:**

**Fraud/Intentional Acts**
(Against Defendants Miller, Carson, Stark and Keenan and Quicken Loans)

133.   Plaintiff re-alleges the previous paragraphs as if fully restated herein.

134.   Each and every one of the said Defendants, directly and/or by and through his/its

respective agents, co-conspirators, aiders and/or abetters acting on his/her/its behalf:

    a.  Asserted false representations of material facts to Plaintiff;

    b.  Knew the material representations made to Plaintiff were false; and

    c.  Made the false representations to Plaintiff for the purpose of defrauding Plaintiff

135.   Each and every one of the said Defendants knew that the aforesaid

representations were false and/or made them to Plaintiff with such reckless disregard for the

truth such that knowledge of the falsity of each of his/her/its representations can be imputed to

each and every such said Defendant.

136.   Plaintiff relied with justification on the representations made to her by the said

Defendants.

137.   Said Defendants committed the aforesaid intentional acts of fraud and/or

misrepresentation to the financial detriment of Plaintiff without the prior knowledge, consent of

authorization of Plaintiff and/or Miller's mortgage funding lender by in connection with th

Transaction by conducting the March 4, 2010 settlement under terms and circumstances tha

he/it/they knew or should have known, in the proper exercise of reasonable and necessar

prudence and due diligence as a settlement agent and/or title insurance producer and titl

company violated PHIFA, MCPA and/or other State and/or Federal laws applicable to th

Transaction, and/or with reckless disregard for the truth of said violations of such laws an

statutes; and by charging and/or accepting payment of commissions and/or settlement fee

payable to her/it at the expense of Plaintiff based on an illegal transaction;

138.    Plaintiff suffered damages as a direct result of his reliance on the aforesai

intentional acts of fraud and false representations made to her by each of the said Defendants.

**WHEREFORE**, Plaintiff Suzanne M. Giannasca prays for the following relief, jointly an

severally, against Todd P. Miller, Edwin G. Carson, Stark and Keenan, P.A. and Quicken Loan

including, but not limited to:

    a.  Return of any money or property given by the Plaintiff to anyone, including eac

        and every one of the Named Defendants and/or third parties, in connection wit

        the Transaction;

    b.  Actual damages in an amount to be determined at trial, with interest and costs

    c.  Compensatory damages in the sum of $1,000,000.00, with interest and costs;

    d.  Punitive damages in the sum of $2,000,000.00, with interest and          costs

    e.  An award of reasonable attorney's fee and costs; and

    f.  Such other relief at law or equity as this Court may deem just and proper.

### Count IV:

### Negligence
(Against All Named Defendants)

139.    Plaintiff re-alleges the previous paragraph as if fully set forth herein.

140.    Each of the said Defendants had duties to exercise due diligence to determine tha the Transaction described herein was not illegal in violation of the PHIFA, MCPA and/or i violation of other State or federal law, or otherwise irregular.

141.    Each and every one of the said Defendants had duties to inquire into the tru nature of the Transaction.

142.    Each and every one of the said Defendants had knowledge of the defectiv aspects of the Transaction and/or lease agreements with Plaintiff, or should have known those facts, or willfully blinded themselves to those facts.

143.    Each of the said Defendants further owed duties to the extent of any fees paid t them directly and indirectly arising of the Transaction.

144.    Said Defendants committed acts of negligence and/or gross negligence based o reckless disregard for the equities of the Transaction and associated terms negotiated resultin to the financial detriment of Plaintiff without the prior knowledge, consent or authorization Plaintiff and/or Miller's mortgage funding lender in connection with the Transaction by conductin the Settlement under terms and circumstances that she/it/they knew or should have known, i the proper exercise of reasonable and necessary prudence and due diligence as a settlemer agent and/or title insurance agent/settlement agency, violated PHIFA, MCPA and/or other Stat and/or Federal laws applicable to the Transaction.

145.    Each and of the said Defendants breached their respective duties to Plaintiff whe they failed to conduct due diligence inquiries into the March 4, 2010 and/or February 20, 201 Transactions to determine the full legitimacy of the Transaction, whether there was a cloud o

title caused by the aforesaid Deeds of Rescission, failed to identify the March 4, 201

Transaction as highly prejudicial to Plaintiff, failed to flag the Transactions as in violation of th

PHIFA, MCPA, and other Maryland and Federal laws, failed to refuse to settle the Transactic

when on actual and/or constructive notice of the irregularities and illegalities apparent in th

Transaction, when they willfully participated in, facilitated or blinded done with this themselves t

the illegalities in the Transaction, and when they willfully continued to persist in acting contrary t

PHIFA, MCPA by their respective acts and/or omissions conducted after the Transactioi

including, but not limited to, encouraging Plaintiff and others to enter into leases, addition;

agreements and/or other arrangements that were an extension of all of the aforesaid acts an

omissions that were in violation of PHIFA, MCPA and other Maryland and/or other Federal laws

146.    Each of the said Defendants' respective breaches of duty proximately cause

damages to Plaintiff, including, but not limited to, the loss of the equity in Plaintiff's Property du

to the illegal nature of the Transaction, illegal fees, commissions and "kick-backs" received, pai

and/or disbursed by the said Defendants, and the other fees taken in the Transaction.

147.    Each and every one of the said Defendants engaged in the acts and omissior

described hereinabove, which caused injuries and damages to the Plaintiff as described above.

148.    Stark and Keenan breached its duty of care to Plaintiff by failing to proper

oversee its employees and/or agents and/or continued to employ or utilize said employee

and/or agents, including, Carson, when it knew, or by the exercise of reasonable inquiry and du

diligence, should have known, that settlement transactions being conducted by Carson on it

behalf, including the subject Transaction, were the subject of arranged unfair and illeg;

negotiations detrimental to Plaintiff, that took unearned fees or "kickbacks," and that wer

otherwise in the nature of violation(s) of PHIFA, MCPA and other Maryland and/or federal laws.

149.   Stark and Keenan did not properly oversee its employees and/or agents or perform

any meaningful due diligence when they knew or should have known of the irregularities of

Carson's activities on its behalf.

150.   Stark and Keenan's aforesaid acts and omissions constitute a breach of duty to

supervise Carson's activities, which breach was the proximate cause of damage to the Plaintiff.

151.   Each and every one of the said Defendants acted in wanton or reckless disregard

for truth and/or the rights of Plaintiff.

The separately enumerated acts/omissions committed by each of the said Defendants constitute

acts of gross negligence and as much as each of said Defendants owed a separate, respective

duty of care to Plaintiff, directly and/or indirectly and breached his/its/their respective duty of care

to Plaintiff and did so willfully, wantonly, and/or with reckless disregard for the truth of the actual

illegal nature of their conduct and/or that of the other said Defendants, or otherwise turn a blind

eye to any reasonable search for the truth about the actual illegal nature of each RB other said

Defendants' conduct as it related to the March 4, 2010 Transaction, and events following the

Transaction, and thereby causing damage to Plaintiff.**WHEREFORE**, Plaintiff Suzanne M.

Giannasca prays for the following relief, jointly and severally, against Todd P. Miller, Edwin G.

Carson, Stark and Keenan, P.A., Midstate, Chicago Title, and Quicken Loans, separately and

distinctly by incorporating via reference herein, and hereby prays for the same nature and extent

of enumerated relief, jointly and severally, against each and every said Defendant as more fully

set forth in the *ad damnum* clause in Count III (Fraud).

### Count V:

### Gross Negligence
(Against All Named Defendants)

152.   Plaintiff re-alleges the previous paragraph as if fully set forth herein.

153.   Each of the said Defendants had duties to exercise due diligence to determine tha

the March 4, 2010 Transaction describe herein was not illegal, in violation of the PHIFA, i

violation of other law, or otherwise irregular. Said Defendants had duties to inquire into th

nature of said Transaction due to the fact that the Property was a "residence in default" unde

PHIFA, due to the fact that the purchase price was far less than fair market value, and due to th

fact that the disbursements of funds shown on the HUD-1 did not comport with equity and/c

reality, and said Defendants had knowledge of those facts, or should have known of those fact

or willfully blinded themselves to those facts.

154.   Said Defendants further owed a duty as a result of the fees paid by the Plaintiff t

them.

155.   Said Defendants breached their duties when they failed to conduct due diligenc

inquiries into the March 4, 2010 Transaction to determine the legitimacy of the transaction:

failed to determine whether the HUD-1 forms they prepared accurately reflected th

disbursement of funds in the settlements they were conducting, failed to flag the transactions a

in violation of PHIFA despite knowledge that, or the ability to obtain pre-settlement knowledg

that, the the Property was a "residence in default" as defined by PHIFA, failed to refuse to settl

the transactions when on actual and/or constructive notice of the irregularities, suspicious natur

and illegalities apparent in the Transaction, and when they willfully blinded themselves to th

illegalities in the Transaction.

156.   Said Defendants' breaches of duty proximately caused damages to Plainti

including the loss of title to her home, the substantial equity taken from her home as a dire

result of the Transaction, and the other fees taken in the Transaction.

157.   Said Defendants acted in wanton or reckless disregard for the rights of the Plainti

158.   Defendants Carson and/or Stark and Keenan were agents of Chicago Title at a times relevant to the facts alleged in this Count, and as agents, were acting within the scope their agency agreement with Chicago Title at all times relevant to the facts composing this Cou

159.   Said Defendants engaged in the acts and omissions described above, whic caused injuries and damages to the Plaintiff as described above.

160.   The acts and omissions of Carson and/or Stark and Keenan, which caused injurie to the Plaintiff, were committed within the scope of their agency with Chicago Title.

161.   These acts and omissions were committed when Carson and/or Stark and Keena were performing services as agents for which they had been engaged by Chicago Title, an while acting in furtherance of Chicago Title's interests.

162.   In addition, Chicago Title had a duty to oversee its agents under the law, a described above, and to make independent inquiry about the nature of the March 4, 201 Transaction to ensure that it did not violate PHIFA and/or was not otherwise irregular, suspec or illegal, and its negligent failure to do so as required by State and Federal law caused th Plaintiff's damages as described herein.

163.   Chicago failed to oversee its agents, and its negligent failure to oversee its agent as required by State and Federal law caused the damages of the Plaintiffs described herein.

164.   Had Chicago Title overseen its agents, audited their closings, and performed th oversight role that State and Federal governments required them to perform in order to prote persons such as Plaintiff misappropriations of funds, fraudulent and illegal real estate purchas transactions and disbursements, Plaintiff would not have suffered the damages described herei which were caused by the negligent failures of oversight by Chicago Title.

165.   Chicago Title and Midstate had a duty to independently assess whether the Marc

4, 2010 Transaction violated PHIFA and/or was otherwise irregular, suspect, or illegal.

166.   Midstate and Chicago Title failed to independently assess whether the March 4, 2010 Transaction violated PHIFA and/or was otherwise irregular, suspect, or illegal, and the negligent failure to do so as required by State and Federal law caused the Plaintiff's damages as described herein.

167.   Had Midstate and Chicago Title independently assess whether the March 4, 201 Transaction, audited their closings, and performed the oversight role that State and Federa governments required them to perform in order to protect persons such as Plaintiff from misappropriations of funds, fraudulent and illegal real estate purchase transactions and disbursements, Plaintiff would not have suffered the damages described herein, which were caused by the negligent failures of oversight by Midstate and Chicago Title.

**WHEREFORE**, Plaintiff Suzanne M. Giannasca prays for the following relief, jointly and severally, against Todd P. Miller, Edwin G. Carson, Stark and Keenan, P.A., Midstate, Chicago Title, and Quicken Loans, separately and distinctly by incorporating via reference herein, and hereby prays for the same nature and extent of enumerated relief, jointly and severally, against each and every said Defendant as more fully set forth in the *ad damnum* clause in Count I (Fraud) and IV (Negligence).

### Count VI:

### Declaratory and Injunctive Relief
(Against All Defendants)

168.   Plaintiffs re-allege and incorporate by reference the foregoing allegations.

169.   This claim for declaratory relief is brought under the Federal Declaratory Judgment Act, 28 U.S.C. §2201(a), to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations under the deed of the Plaintiff and the consumer protection

embodied in Maryland's PHIFA statute.

170.   Miller maintains that he has a valid deed to the Property despite the fact that h
violated PHIFA as described herein, despite the fact that he acted as a foreclosure consultar
when also acting as foreclosure purchaser, and despite the fact that Carson and/or Keenan an
Stark also simultaneously acted as foreclosure consultants in direct violation of PHIFA.

171.   Plaintiff maintains that the March 4, 2010 deed to Miller is void as in violation of th
public policy set forth in PHIFA.

172.   Miller will continue to maintain that he has title to the Property of Plaintiff an
continue to use the equity in and/or rental income potential from the Property to further h
interests to the extreme detriment of Plaintiff unless and until this Court declares and affirms tha
the March 4, 2010 is void.

173.   This presents an actual, judicable controversy between the parties relating to th
construction of the March 4, 2010 deed to the Property of Plaintiff and the application of th
Maryland PHIFA statute to that deed.

174.   Plaintiff has a right to be free from the claim of Miller to her Property.

175.   The benefits to Plaintiff in obtaining an injunction preventing transferring
encumbering, collection of rental income derived, and/or otherwise benefiting from, the Propert
of Plaintiff outweigh any potential harm Miller would incur as a result of an injunction, under th
balance of the convenience test, as Miller has no legal or contractual right to title to the Propert
of Plaintiff and illegally obtained title by recording the deed -- with the assistance of Carsor
Stark and Keenan, Midstate, and/or Chicago Title -- before the expiration of the rescission perio
afforded to the Plaintiff under PHIFA.

176.   Plaintiff and/or her Bankruptcy Estate would greatly benefit from being relieved

the attempts of Miller to transfer, collect rental income from, and/or encumber the Property.

177.   Plaintiff and/or her Bankruptcy Estate will suffer irreparable injury unless th
requested injunctions are granted, as Miller will continue to attempt to transfer, collect rent
income from, and/or encumber the Property of Plaintiff.

178.   The public interest is best served by granting the requested injunctions.

179.   The public policy reflected in PHIFA shows that the public interest is served b
enforcing the statute, and the public and the State have a compelling interest in preventin
illegal foreclosure rescue scams from occurring in violation of the law.

180.   Plaintiff are likely to succeed on the merits of this action, as PHIFA explicit
requires that Miller and certain other Defendants provide disclosures and rescission notices, an
comply with PHIFA in other respects, which Miller and certain other Defendants clearly did n
do as established by the lack of those documents in the transactional files of Plaintiff, Mille
Carson, Stark and Keenan, Midstate and/or Chicago Title.

181.   In addition, PHIFA expressly prohibits any foreclosure consultant from taking ar
interest in a Property subject to a foreclosure reconveyance, and the form documents in th
case clearly establish that Miller, Carson, Stark and Keenan, Midstate and/or Chicago Title too
interests in the Property of Plaintiff while simultaneously acting as foreclosure consultant
rendering the deed void (or voidable) *ab inito*.

182.   Finally, PHIFA expressly prohibits the recordation of any deed or other documen
including the March 4, 2010 Deed and all Deeds of Trusts in the name of Miller pertaining to th
Property, that affects title to the Plaintiff's residence until after the homeowners' right
rescission period has ended, rendering any such prematurely recorded documents, as in th
March 4, 2010 Deed and all Deeds of Trusts in the name of Miller pertaining to the Property

subject to being void (or voidable) *ab initio*.

183.   Notwithstanding this express prohibition, all named Defendants recorde

documents from the Plaintiff in violation of PHIFA.

**WHEREFORE**, Plaintiff Suzanne M. Giannasca prays for the following relief, jointly and several

against all named Defendants, separately and distinctly, to the extent respectively applicable, b

incorporating via reference herein, and hereby prays for the same nature and extent

enumerated relief, jointly and severally, against each and every said Defendant as more fully s

forth in the *ad damnum* clause in Count III (Fraud), IV (Negligence) and V (Gross Negligence

and Plaintiff further requests:

A.   An Award of compensatory damages in the amount of the equity taken from th

Property of Plaintiff against all Named Defendants, jointly and severally;

B.   An Award of compensatory damages in the amount of the rental income derived fro

the Property of Plaintiff from March 4, 2010 to present and continuing against a

Named Defendants, jointly and severally;

C.   Pursuant to PHIFA, for the Plaintiff, an award against all named Defendants, joint

and severally, equal to up to three times the amount of any and all damages due f

the Defendants' willful conduct;

D.   An award against all Named Defendants to their extent each such Named

Defendant is found to be liable for his/their/its gross negligence, in an amount

to be determined at trial, but in no event less than the total lost equity and rental

income of the Property of Plaintiff, plus punitive damages in the amount of three

times the Plaintiff's lost equity and rental income in and/or derived from the

Property;

E. An award against Chicago in the amount of any and all awards made against Carso

and/or Stark and Keenan;

F. A declaration that the March 4, 2010 deed from Plaintiff to Miller obtained and filed i

violation of PHIFA, is void, *ab initio*;

G. A declaration that the March 4, 2010 deed from Plaintiff to Miller obtained and filed i

violation of PHIFA, is voidable, *ab initio*;

H. A declaration that any encumbrances incurred by Miller based on the illegally

recorded deed is void, *ab initio*;

I. A declaration that any encumbrances incurred by Miller based on the illegally

recorded deed is voidable, *ab initio*;

J. An injunction prohibiting Miller from transferring or otherwise encumbering the

Property of Plaintiff;

K. An injunction prohibiting Miller from continuing to receive rental income from the

Property of Plaintiff;

L. An injunction prohibiting Miller from renting, or continuing to rent, the Property

of Plaintiff;

M. An injunction prohibiting Miller from possessing the Property of Plaintiff;

N. An injunction prohibiting Miller from inhabiting, or allowing any third party to

inhabit, the Property of Plaintiff;

O. An injunction ordering Miller and Midstate to immediately surrender and/or

disgorge a lump sum dollar amount equivalent to all past rental income

proceeds derived from the Property and/or received by Miller, or any third party

on Miller's behalf, directly or indirectly, at any time to date and including

Midstate, to Plaintiff Michael G. Rinn, Chapter 7 Trustee;

P.  An injunction ordering Miller and Midstate to immediately surrender and/or disgorge a lump sum amount equivalent to all future rental income proceeds to be derived from the Property and/or received by Miller, or any third party on Miller's behalf, directly or indirectly, at any time to date and including Midstate, to Plaintiff Michael G. Rinn, Chapter 7 Trustee;

Q.  An award of pre- and post-judgment interest, expense and costs;

R.  An award of Plaintiffs' Attorney's fees and costs as permitted under PHIFA, MCPA, any other applicable State or Federal law, and/or any Order in Plaintiff's United States Bankruptcy Court Chapter 7 Case No.: 11-20853; and

Such other and/or further relief as the nature of this case and Plaintiffs' respective causes may require.

Respectfully submitted,


_____/s/_____
Leslie A. Pladna, Esquire (#08840)
Leslie A. Pladna & Associates, P.A.
6502 Overheart Lane
Columbia, Maryland 21045-4542
410-370-3400 (Direct)
410-381-6238 (Office)
410-381-6340 (Fax)
Email: lesliepladna@gmail.com
Attorneys for Plaintiff Suzanne M. Giannasca


## Prayer for Jury Trial

Plaintiff, Suzanne M. Giannasca, prays a trial by jury on all causes of action set forth herein allowed under the rules and law.

_____/s/_____
Leslie A. Pladna, Esquire (#08840)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY this 4th day of March, 2013 that a copy of (both the redlined and non-redlined versions) of the foregoing First Amended Complaint along with all

Exhibits previously submitted upon the filing of the original Complaint on March 3, 3013 shall be served contemporaneously on all Named Defendants upon service of the yet to be issued Writs of Summons for all such Named Defendants.

_____/s/_____
Leslie A. Pladna, Esquire (#08840)

## INDEX OF EXHIBITS

EXHIBIT 1 - Carson's MIA Title Producer's License Certification
EXHIBIT 2 - July 28, 1993 Deed to Property
EXHIBIT 3 - July 28, 1993 Purchase Money Deed of Trust
EXHIBIT 4 – September 4, 1998 Deed of Trust
EXHIBIT 5 - September 25, 2003 (Refinance) Deed of Trust
EXHIBIT 6 - October 3, 2003 Certificate of Satisfaction
EXHIBIT 7 - October 15, 2003 Certificate of Satisfaction
EXHIBIT 8 - June 29, 2007 Deed to Property
EXHIBIT 9 - October 12, 2009 Statement of Lien against Property
EXHIBIT 10 - December 8, 2009, a Blanket Assignment of Mortgage/Deed of Trust
EXHIBIT 11 - SDAT Property Tax Record (dated December 11, 2009)
EXHIBIT 12 - December 16, 2009 Lease
EXHIBIT 13 - December 16, 2009 Lease Addendum
EXHIBIT 14 - December 17, 2009 Purchase Agreement
EXHIBIT 15 - December 17, 2009 Amendment Agreement
EXHIBIT 16 - March 4, 2010 Deed to Property
EXHIBIT 17 - March 4, 2010 Purchase Money Deed of Trust
EXHIBIT 18 - March 4, 2010 Collateral Assignment of Rents and Leases
EXHIBIT 19 - March 16, 2010 a Certificate of Satisfaction
EXHIBIT 20 - May 17, 2010, HELOC (2nd) Deed of Trust
EXHIBIT 21 - May 5, 2011 Deed of Rescission
EXHIBIT 22 - May 23, 2011 Chapter 7 Bankruptcy Petition (Case No.: 11-20853)
EXHIBIT 23 - July 7, 2011 Complaint for Repossession of Rented Property
EXHIBIT 24 - August 31, 2011 Order of Discharge of Debtor (Case No.: 11-20853)
EXHIBIT 25 - December 13, 2011 Deed of Rescission
EXHIBIT 26 - February 28, 2012 (Non-Principal Residence) Deed of Trust
EXHIBIT 27 - March 14, 2012 Certificate of Satisfaction
EXHIBIT 28 - January 30, 2013 Letter from Leslie A. Pladna, Esquire
EXHIBIT 29 - February 1, 2013 Letter from Edwin G. Carson, Esquire
EXHIBIT 30 - March 4, 2010 HUD-1 Settlement Statement